```
            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION
```

MATTHEW MICHAEL KEATING                                          PLAINTIFF

v.                     Civil No.: 5:08-cv-5187

OFFICER FREEMAN ET AL.                                          DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Matthew Michael Keating, currently an inmate in the Wrightsville Unit of the Arkansas Department of Correction, filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

Now before this Court is the Motion for Summary Judgment filed by the Defendants herein. (Doc. 18). The Court has also considered the Response filed by the Plaintiff, through a questionnaire submitted to him by the Court. (Doc. 24)

### I. Background

As this case is before the Court on Defendants' Motion for Summary Judgment, the Court will state the facts as pled by the non-moving party, the Plaintiff. Generally, Plaintiff alleges he was allowed access to his personal property, except for $2,001.00, when he was incarcerated at the Washington County Detention Center. (*Id.*) At the time of his arrest, Plaintiff had approximately $4,625.00 on his person; $2,624.00 of this amount was seized by the

drug task force and Plaintiff was provided with a confiscation report signed by Detective Lathom on June 17, 2008. (*Id.*) The remaining $2,001.00 was in his wallet and was inventoried by the Defendants as his personal property, along with other items. (*Id.*)

Plaintiff requested that this money be released to his friends and family and had signed appropriate paperwork for such a transfer, however the Defendants refused to release the money. (*Id.*) Plaintiff states that he had no due process regarding the "confiscation" of his money. (Doc. 24, ¶ 1).

Plaintiff's specific allegations are as follows: on June 17, 2008, Plaintiff was booked into the Washington County Jail on charges of misdemeanor "commit," possession of drug paraphernalia, possession of controlled substance, and a hold for the U.S. Marshal due to a parole violation. (*Id.* at ¶ 2).

Officer S. Stout inventoried Plaintiff's property on June 17, 2008, and listed a gold toe ring, rope cloth necklace, blue long sleeved shirt, blue jeans, brown boots and a brown belt. (*Id.* at ¶ 3). Plaintiff signed this property list along with Officer Stout. (*Id.*) Plaintiff asked Officer Stout about the wallet, money, and credit cards but was told that said property had "not yet arrived" and that Plaintiff should sign for the property that was there. (*Id.*) At the time of booking and completion of the intake sheet, which was signed by Plaintiff, no money, including bills and change, was noted on the intake form. (Doc. 24, ¶ 4).

Cpl. Allan Lunsford submitted an incident report on June 26,

2008, regarding property that was not logged in. (*Id.* at ¶ 5). Cpl. Lunsford noted that at 7:50 on 06/26/08, he was in property and Deputy Melinda Sanders informed him that someone had called the jail to ask about Plaintiff's property. (*Id.*) Deputy Sanders stated that the caller had said there was supposed to be more property. (*Id.*) Cpl. Lunsford looked into Plaintiff's property bag and found a small paper sack stuffed into a gray bag. (*Id.*) The bag was labeled with the date and time: "6-17-08; 2:58 p.m." (Doc. 24, ¶ 5). Also listed on the bag were some numbers and a money amount of $2,624.00. (*Id.*) Cpl. Lunsford reviewed Plaintiff's file and found that none of the property was logged. (*Id.*) Cpl. Lunsford searched and logged the following property: a leather like wallet, 3 Visa cards, 1 MasterCard, miscellaneous papers, cards, battery, red lighter, and $2,001.00. (*Id.*)

An Inmate Personal Property Sheet was prepared on June 26, 2008, listing all this property, including the $2,001.00 in cash. (*Id.* at ¶ 6). Cpl. Lunsford and Plaintiff signed the property sheet. (Doc. 24, ¶ 6).

On June 26, 2008, Plaintiff received a $30.00 money order from Christy Reynolds. *(Id.* at ¶ 7). On July 10, 2008, Plaintiff released items from his personal property to Randy Cooper (*Id.* at ¶ 8). Mr. Cooper and Plaintiff each signed the release, which permitted Mr. Cooper to take 3 Visa cards, 1 MasterCard, battery, wallet, gold tone ring, rope cloth necklace, miscellaneous cards/papers, and a red lighter. (*Id.*)

-3-

On July 16, 2008, Plaintiff received from Christy Reynolds a $50.00 money order. (*Id.* at ¶ 9). Plaintiff received a $500.00 money order from Randy Cooper on July 17, 2008. (Doc. 24, ¶ 10). On July 19, 2008, Plaintiff received from Christy Reynolds a $50.00 money order. (*Id.* at ¶ 11).

Plaintiff submitted a request dated August 3, 2008, which requested a statement of account in order for him to proceed with filing his Section 1983 action. (*Id.* at ¶ 12). Plaintiff stated he wanted the return of his money that had been unlawfully seized in June, 2008. (*Id.*) This was not Plaintiff's first request for the return of the money. (*Id.*) According to Plaintiff, Sgt. Freeman responded, "I will personally ensure that you never see that money again." (Doc. 24, ¶ 12). According to Defendants' Statement of Facts and the answered grievance submitted by Defendants, Sgt. Freeman responded, "I spoke with federal probation officer B. Dunn, Mr. Dunn told me you still owe $1,950.00 on a federal court case. Mr. Dunn told me to set your money aside, he will have a letter sent, saying that your money will be seized. As soon as I have that information, I will give it to you." (Doc. 20, ¶ 11; Doc. 20-5).

On August 3, 2008, Plaintiff submitted a grievance involving $2,001.00 that he stated was taken from his personal property by the Washington County Detention Center and had not been relinquished to its rightful owner. (Doc. 24, ¶ 13). Plaintiff stated he had a friend come to pick it up but the deputies would

not release it.  (*Id.*)  Plaintiff complained no seizure papers had been given to him and the Washington County employees lacked the authority to seize his property.  (*Id.*)  Sgt. Freeman responded "[a]nswered same request today."  (*Id.*)

On September 22, 2008, the Washington County Sheriff's Office received from assistant U.S. Attorney Jacqueline Hotz of the Eastern District of Michigan, a Garnishee Order to Pay.  (Doc. 24, ¶ 16).  The Honorable Robert H. Cleveland for the U.S. District Court, Eastern District of Michigan, Southern Division ordered Matthew Keating and the Washington County Detention Center to remit $1,950.00 to the Clerk of the Court, Theodore Levin, Detroit, Michigan to pay Mr. Keating's debt in full.  (*Id.*)

Sgt. Freeman reported on September 23, 2008, he received the Michigan Court Order of Garnishment directed to Plaintiff.  (*Id.* at ¶ 19).  Sgt. Freeman reported that he took Plaintiff's money to the Washington County Treasury Office at the Washington County Courthouse.  (Doc. 24, ¶ 19).  The Treasury Office provided Receipt #99115 for $1,950.00.  (*Id.*)  The remaining $51.00 was placed back into Plaintiff's property to be placed on his commissary account.  (*Id.*)  The Washington County Treasury Office then issued Check #99115, in the amount of $1,950.00, to the Clerk of Court in Detroit, Michigan.  (*Id.*)  Plaintiff was informed regarding the status of his funds and that the remaining $51.00 was put on his account.  (Doc. 24, ¶ 19).

On September 29, 2008, the return receipt for the check sent

by certified mail to the Clerk of Court in Detroit, Michigan was returned to the Washington County Jail. *(Id.* at ¶ 23).

On November 6, 2008, Randy Cooper provided a $40.00 money order to be placed in Plaintiff's commissary account. (*Id.* at ¶ 24). Valerie Keating deposited a $30.00 money order into Plaintiff's commissary account on December 23, 2008. (Doc. 24, ¶ 25).

Plaintiff was transferred to the Arkansas Department of Correction on January 9, 2009. (*Id.* at 26). At the time of his departure, he received and signed for his property. (*Id.*)

## II.  Applicable Law

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Discussion

### A.  Property Claim

Under the facts of this case, Plaintiff is the judgment

debtor, Defendants are the Garnishees and the United States District Court for the Eastern District of Michigan is the Garnishor. Although Plaintiff has a property interest in the money in his inmate account or property, *Elliott v. Simmons*, 100 Fed. Appx. 777, 779, 2004 WL 1240915 (10th Cir. 2004), he does not set forth specific federal, state or constitutional procedural safeguards that defendants allegedly violated. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 519-20 (10th Cir. 1998) (procedural due process claim must set forth procedures due under law). Additionally, if Plaintiff did not believe he received the correct paperwork for his property to be garnished, that claim would most likely lie against the Garnishor, not the Defendants in this case, who were Garnishees. Absent an allegation that Defendants violated applicable procedural safeguards, plaintiff has failed to state a claim for violation of his procedural due process rights. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (pro se plaintiff must allege sufficient facts on which recognized legal claim could be based; conclusory allegations without supporting factual averments are insufficient).

Moreover, even if Plaintiff was denied due process by Defendants, the United States Supreme Court has held that neither the negligent nor intentional, random, or unauthorized deprivations of property under color of state law are actionable where a plaintiff has an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527,

541 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994)(negligent or intentional deprivation of prisoner's property fails to state claim under § 1983 if state has adequate post-deprivation remedy).  Arkansas law recognizes a cause of action for conversion when property is wrongfully taken from its owner.  *Elliot v. Hurst*, 817 S.W.2d 877, 880 (1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right).[1]  Thus, Plaintiff has an adequate state law remedy by way of a conversion cause of action.  Accordingly, the deductions from Plaintiff's inmate property simply do not rise to a claim of constitutional dimension.

### B.  **Remaining Claims**

Plaintiff has also, through his Complaint (doc. 1) and the Supplement to his Complaint (doc. 5), brought the following claims: Defendants failed to provide him with copies of his requests and grievances; Defendants failed to provide him with

---

[1] In their Brief in Support of the Motion for Summary Judgment (doc. 19), Defendants argue the State of Arkansas provides an adequate post-deprivation remedy through the Arkansas Claims Commission. (Doc. 19 at 4), *see also* ARK. CODE ANN. § 19-10-204.  However, the statute itself makes clear the "Arkansas Claims Commission shall have exclusive jurisdiction over all claims against the State of Arkansas . . .but shall have *no* jurisdiction of claims against municipalities, counties, school districts, or any other political subdivisions of the state."  ARK. CODE ANN. § 19-10-204 (a)(emphasis supplied).  As such, the Arkansas Claims Commission could not provide a remedy for Plaintiff in this case.  *See also, Bumgarner v. Bloodworth*, 728 F.2d 966 (8th Cir. 1984) (holding under a similar prior statute that the Claims Commission was not empowered to grant plaintiff adequate relief since only one defendant, a state trooper, was subject to jurisdiction of the Claims Commission).

adequate medical care; and Defendants allowed tobacco products to be brought into the facility.

Plaintiff's claim regarding copies of grievances is not a constitutional claim. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)(holding inmate failed to state a claim regarding the failure to process grievances because this procedure confers no substantive right upon inmates). Accordingly, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be granted regarding Plaintiff's claim he did not receive copies of grievances.

Additionally, when queried about his denial of medical care claim and tobacco product claims, Plaintiff responded these claims were of "no relevance" to the above-styled case. (Doc. 24, ¶¶ 27-32). On June 1, 2010, this Court issued an Order to the Plaintiff, directing him to return an attached Notice regarding the First Motion for Summary Judgment (Doc. 18), and by such Notice, inform the Court as to whether he would be responding to the Motion for Summary Judgment on his own. (Doc. 21). Plaintiff stated he required the Court's assistance. (Doc. 22).

Accordingly, on July 8, 2010, the Court issued a Response to the Plaintiff, notifying him therein that the questions and answers will serve as his response to Defendants' Motion for Summary Judgment. (*Id.*) Plaintiff failed to respond to the questions regarding his denial of medical care claims and tobacco claims, much less establish a genuine issue of material fact for trial.

(Doc. 24, ¶¶ 27-31).[2]

Plaintiff has failed to provide any facts showing he was denied medical care through deliberately indifferent actions on the behalf of the Defendants, or that he even had a serious medical condition.  As such, the Motion for Summary Judgment should be granted regarding Plaintiff's claims of denial of medical care. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (stating deliberate indifference to a serious medical condition is required to state a claim of denial of medical care).

Likewise, Plaintiff has also failed to allege any facts which would support his theory that a constitutionally protected right was infringed by staff members of the Washington County Detention Center bringing in smokeless tobacco products for personal use and

---

[2] While Plaintiff stated the claims had "no relevance" he also stated he "did not wish to pursue inadequate medical care allegations at this time." (Doc. 34, 27).  The Court does not construe this statement as a Motion to Dismiss because such construction would ultimately be futile.

In determining whether to grant a Plaintiff's motion for voluntary dismissal, a district court should consider the following factors: (1) whether the plaintiff has presented a proper explanation for the desire to dismiss, (2) whether the defendant has expended considerable effort and expense in preparing for trial, (3) whether the plaintiff exhibited "excessive delay and lack of diligence" in prosecuting the case, and (4) whether the defendant has filed a motion for summary judgment. *Paulucci v. City of Duluth*, 826 F.2d 780,783 (8th Cir.  1987).  In general, a district court should not grant a motion for voluntary dismissal merely because a plaintiff seeks a more favorable forum or wishes to escape an adverse decision. *See, e.g., Cahalan v. Rohan*, 423 F.3d 815, 818 (8th Cir.  2005).

As to the first factor, Plaintiff put these specific allegations at issue and had the opportunity to move to voluntarily dismiss those claims prior to summary judgment, but did not, and he has merely stated he does not wish to pursue those claims, without explanation.  This leads to the second factor because as a result of Plaintiff's failure to dismiss, Defendants extended time in both discovery and the motion for summary judgment, in responding to these claims.  The third factor is similar to the first in that Plaintiff's delay until the point of Summary Judgment to not pursue these claims is excessive delay and a lack of diligence.  The fourth factor is also satisfied by the Motion before the Court at this time.

to sell to inmates. Defendants Motion for Summary Judgment should be granted regarding Plaintiff's tobacco claims.

### IV. Conclusion

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment (Doc. 18) be GRANTED in its entirety.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b) (1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of August 2010.

/s/ Erin L. Setser
HON. ERIN L. SETSER
U.S. MAGISTRATE JUDGE